Good morning. May it please the Court, Jill Gensling on behalf of the Appellant Thomas Salas. The condition in this case is indeed a ban on unapproved Internet access. Mr. Salas is permitted to use only those computers, computer-related devices, usernames, passwords, e-mail accounts, Internet service providers as approved by his probation officer. He's electronic games and cellular phones as approved by his probation officer if those devices can access the Internet or be modified to access the Internet. The condition is all about Internet access, despite the fact that this case, the offense, has nothing to do with the Internet, and Mr. Salas has never used the Internet for an improper purpose. The plain language of the condition gives the probation officer the authority to decline to approve the use of any of those devices, accounts, passwords. If there's no approval, he can't use them. The case is therefore properly analyzed under the other case law that applies to bans on unapproved Internet access. And on that point, this Court's decision in TM is controlling. The condition in that case was the functional equivalent of the condition here. It stated the defendant could not use a computer or any device that could access the Internet without his probation officer's approval. And the same is true with Mr. Salas, except Mr. Salas's condition goes even further because he can't, even if the actual equipment is approved, the computer, the probation officer says, yes, you can use that computer, he still has to have every username, every password, every e-mail account approved by his probation officer. Despite the fact that that limitation wasn't present in TM, this Court found that that because there was no reasonable relationship between the condition and the offender who was convicted of a marijuana offense or his 20-year-old history of child sex offenses. And he did have such a history, and there were some indications of more recent indications of sexual misconduct. However, Mr. Salas has none of that. TM is controlling here. To affirm the ban in this case would be an unprecedented extension of the case law involving computer and Internet restrictions. But, counsel, what limitations could be placed? Could they, I assume, forbid him to have a scanner, maybe forbid him to have a printer? Your Honor, I think that would certainly be a closer call, but I don't even know that I would agree that that's necessary. The vast majority of offenses involve some sort of implement. But we don't see that kind of condition. The Court typically doesn't find it necessary. For example, when a defendant commits bank robbery, we don't forbid that defendant from being able to enter a bank again in the future. Well, what devices were necessary for his crime? He had to have a scanner. He had to have a printer. Well, that's what he used in this case. I don't believe the scanner was necessary. The way that he used the scanner, he could just as well have gone over to a copy machine, for example. I think any defendant who's convicted of producing counterfeit currency has used a printer. But I've certainly never seen a condition saying you cannot possess a printer. That doesn't mean it's unreasonable to have that condition, just because it isn't commonly done. I don't know that it would be. He clearly used a scanner and a printer. That's correct. And he clearly used digitally obtained and electronic images of money. That's correct. And I ---- So it seems to me that there may be some areas of reasonableness, even if not common. That's possible, Your Honor. And I think if the condition said he should not use a scanner without the approval of his probation office or a printer without the approval of his probation office, again, it would be a closer call. But that's not what the condition says. The condition goes so much further and tries to sweep in so much more conduct, conduct that is constitutionally protected. Like a cell phone. Correct. I mean, under the wording of this condition, if Mr. Salas is out of his apartment, if he's out to lunch with a friend and he wants to call his mother and borrow his friend's cell phone, it would technically be a violation of this condition to be able to do that without his probation officer's permission. The language of the condition is clearly designed to target Internet access. I think it's interesting that the condition that was at issue in Reardon, the defendant in Reardon argued that the phrase computer or computer-related devices could be interpreted to cover cell phones and PDAs. This Court said that would not be a reasonable interpretation of the condition. And the probation office in this case turned around and, in fact, adopted what this Court already said would be an unreasonable condition. No, be careful. An unreasonable interpretation of the existing condition does not mean that it would be an unreasonable condition if they spelled it out. They were saying that the person wasn't on notice, that that was part of what was forbidden. But that's here. They've tried to make it clear. So that defect isn't here. We're here on whether the substance of it is overbroad, not whether it's confusing to him. Well, that's correct, Your Honor, although I think actually it could be confusing given that if you take it literally, it would require him to pick up the phone and call his probation officer every time he's online and he's asked to enter a username or a password. I think that, you know, it could be argued that does it really mean that? I don't know, but by its plain terms, I think that is clearly what it requires. But the Court is right. My argument is not that the condition is confusing, but that it is so overbroad. It sweeps in so much conduct that has absolutely nothing to do with Mr. Salas's offense and his history. Let's turn to what searches are permissible. Your Honor, the search condition in this case is, again, far beyond anything that would be permissible relating to Mr. Salas or his offense. It is, I believe, like the use condition, designed to identify and ferret out improper Internet usage, which is why Mr. Salas has to submit his Internet billing records, his cable television billing records, his satellite records, his cell phone records. The monitoring that is permitted, it's not clear from the language of this condition, but certainly it appears that this condition would permit the installation of monitoring software that will allow the probation office to know everything that he's doing on his computer. If he writes a love letter to someone on a word processor, if he keeps his financial records. But isn't that condition somewhat more related in the sense that the Internet has on it pretty much everything, including instructions on how to get away with better counterfeiting? And it seems to me that the monitoring is more related and perhaps less intrusive than the sort of pre-blessing requirement of, you know, before you get a cell phone, you have to tell us about your cell phone. You know, I think perhaps some form of monitoring, the Court might be correct. But I disagree with respect to the point about Internet usage, because with respect to the Internet, you could say that of any crime. There's going to be articles about how, you know, how to rob a bank more effectively, how to manufacture methamphetamine. But why is that any different than the old-fashioned conditions that said you're not allowed to consort with bad people who are felons or people who are your old confederates, the other bank robbers that you know? This is kind of the cyberspace of other bank robbers. I don't agree, Your Honor, because there's no indication that Mr. Salas has ever done anything like that. There's no indication that he ever went on the Internet to learn how to do counterfeiting or to access any such information. I think that the general prohibition that he not commit another State, Federal or local crime is sufficient to address that type of concern, and that any Internet monitoring in this case would be inappropriate. If the Court has no other questions, I would like to reserve some time for them. You may do that. Thank you. Thank you. Mr. Silber. May it please the Court. Eric Silber on behalf of the United States. Let's get right to the heart of it and ask. I understand easily the prohibition against scanners and computers, because those were part of the machinery with which he committed the crime, and they certainly make it tempting for a counterfeiter. But why cell phones? Why the breadth of conditions here? Well, I think the breadth of it, because I think the tie with the condition is not just cell phones in general, but it's cell phones that can be modified to access the Internet. What is it about the Internet that's related either to his crime or his past activities or his proclivities to do something wrong or something that makes it relevant? I actually think it's a number of factors. First of all, the Internet, in this context at least, is more like a place than it is anything else. The defendant, to take Dupas as an example, there the Court upheld at least that he could facially validate a search condition with or without cause, with or without a warrant. Presumably that would apply in that circumstance to the defendant's home, whether or not he committed the crime in his home, because you can search a place as part of your monitoring of supervisees to determine whether they're committing other crimes. Well, that deals with the monitoring question, but it doesn't deal at all with the permission question. People don't have to ask permission to go home at the end of the day, even if they have agreed that you can come search. Well, the Probation Office did make clear, and that's in the third addendum to the PSR, sealed extra record page 133, that this wasn't a ban on him possessing computer-related equipment. And computer-related equipment in that context included the Internet, because that's what was embraced within the definition there. So the Probation Office was clear, and the Court adopted this at the sentencing hearing at extra to record page 77. It adopted what the Probation Office had said in the third addendum to the PSR. So the Probation Office and the District Court here were clear, this isn't a ban on him using computers, and this isn't a ban on him using the Internet. But it is a requirement that he have permission. Yeah. It's a ban unless you have permission. Well, the way it was described in the third addendum to the PSR, which is what the Court adopted, was he had to list the items that he was going to have. And the Probation Office indicated at that time they couldn't monitor his compliance with supervised release if they didn't know what computer-related equipment he was using. Well, counsel, that would be okay to say he's got to – perhaps it would be okay to say he's got to list everything that he has. But the way it's read – we read it is that he would have to have consent of the officer to have the equipment. Well, I'd make two points to that. Given that the Probation Office has made clear, and again, the District Court adopted it, that it wasn't a probation on use of the Internet or use of computers, and it's only as – if there's a challenge as to a particular item, whether he can use it. I don't think it presents the ban on Internet and ban on computers the defendant is presenting. So why isn't that written into the condition? Well, I think in this – It's not the condition that was issued. But in this circumstance, the explanation that was provided is by the Probation Office that will be monitoring the defendant in the court that will be making the ultimate determination in this case. Oh, suppose the judge changes and POs change. Well, the third addendum to the PSR is still part of this case. It's what the Probation Office has. It still – Let me ask you a different question. This provision, it seems to me, says that if he's going out installing a computer network for somebody, which I assume means he has to use and have access to their computers, he needs advance permission of the Probation Officer and the Probation Officer can go and search and seize those computers of other people. How do we deal with that? That's what this thing says. Well, we don't know how this is going to operate in that circumstance. The defendant's complaint about his use of computers and how it affected his employment wasn't that it impaired his ability to do networking of any kind. Excuse me? I thought in his complaint that I read it here says, I can't – I go out and I use computers and the Internet when I'm installing cables and computer networks. I'm in the business of installing computers and networks and such. That is part of his complaint. Well, the specific paragraph to the PSR that this refers to, which is paragraph 75, says that the seizure of his computers has impaired his ability to do work in this case. Say that again. You're talking so fast I can't hear you. I apologize, Your Honor. The paragraph of the PSR that the defendant refers to as the burden that this will place on his employment is paragraph 75 of the PSR. And paragraph 75 of the PSR says only that the seizure of his computers has affected his work because he had manuals on there that have prevented him from doing security-related work, not that it affected his computer networking. And, in fact, it says he's not going to work for himself after this federal case terminates, that he will get employment with some employer. I'll call it worse. This condition says that if he uses a computer at his employer, his employer has to get permission – he has to get permission from the probation officer and there has to be search equipment because he's using it. Well, I don't know that I would agree that his installing a computer for someone else would constitute use under the condition. Well, it says all computers used by him shall be subject to search and seizure. So he goes in and he uses my computer when he's trying to do an installation. And I guess he has to tell me, you know, since I'm using it, it's subject to search and seizure. That would probably put a crimp in his business, I would guess. My belief is the most natural interpretation of use would be it wouldn't apply in that circumstance if he was simply setting up a computer and not personally using it. But I think this is similar to what this Court addressed in Reardon. There, there was also a challenge that it was an occupational restriction because computers were necessary to his business. And what this Court said there is the defendant hasn't made a showing that that's actually the case. I agree that it's possible on this record he can make a showing that this condition impacts his business. What he hasn't done on this record is make that showing. He hasn't shown how it would affect his networking, any networking work he does. He hasn't even talked about how much networking he does, if he intends to do that after. The difference between this and Reardon, I'm sorry to be coming back to that after you're on to another thought, though. But it seems to me that the condition was much more closely related to the crimes that were committed there. And, again, I'm doing this on recollection, so I may be wrong. But I thought that was a child pornography case. There was interstate traveling to have sex with a minor. There was Internet pornography involved. And so Internet made sense. It was Internet related. But in that case, it was Internet. This one isn't, correct? That's true. But in Reardon, it was an Internet ban. And a number of courts have noted, the Eighth Circuit in Cume, for example, the Second Circuit of Soski, what is less restrictive in the circumstance which you might otherwise want to ban the Internet is to have search conditions. But it still has to be relevant, doesn't it, to something? Well, I think, first of all, when you have someone who you – I think the reason the defendant says this condition is burdensome is because there's a tie between Internet and computers. I mean, that's what makes this troubling for him is there's nothing in the record that says he uses the Internet. But we presume because he uses computers extensively that he uses the Internet extensively. Well, I understand all that. But the thing that – the instrumentality of the crime was the very local objects of the scanner and the printer, as I understand it. The Internet wasn't involved, as far as I can tell. Well, and the computer. I mean, it was – it is true that the Internet wasn't involved. Right. But it was – if you were not connected to the Internet, if you just had the computer, the scanner, and the printer, that's what he was using to commit these crimes. So I don't understand what the relevance is of the Internet at all. Well, I think given the tie between computers and the Internet, the probation office and the district court don't act unreasonably in saying they simply wanted to monitor what the defendant is doing on the Internet. Well, why? Why? Well, he committed – he used a computer to commit a computer-related crime here. But not an Internet-related crime. It's not like the child porn that you get from Iceland or wherever it comes from. It was freestanding, if you will. That's true. But when you address, for example, going back to the DUPA scenario, I mean, there's no evidence – at least I'm not aware of anything in the decision itself that indicates that he committed the crime out of his home, but you can still search his home to implement the other conditions of supervised release. You can still search the Internet, particularly when you have the close tie between computers and the Internet in general, although not specifically in this case, because the probation office and the district court aren't bound to look for evidence simply of the past crime. I mean, that's not what supervised release is required when you impose a condition. It can deter future crimes. Well, what's the Internet got to do with his future criminality in this case? He's going to look for drugs on the Internet? He's going to seek out nasty pictures? He's going to transmit counterfeit money on the Internet? What? Well, I mean, I think you could, if you want to make a connection to this particular case, the crime that he committed, you could have reason to believe he might, given that his crime of conviction is distributing counterfeit currency, you could have concern, given that it was a digital image of the counterfeit currency, that he would exchange that over the Internet. As Judge Graber indicated, you could have concern that he would research how to make better Federal Reserve notes. There is some evidence that Reserve notes were found in his garbage shredded at the time of the arrest and search in this case, which suggests he was trying to do better quality Federal Reserve notes. In fact, if defendant is believed, and this is a sealed excerpt of Record 45, he says that he got started in this by creating a fake picture on a Federal Reserve note, which suggests he really is using the computer and technology to do this. I see I've gone over my time. May I? You may sum up. In summary, the Internet condition in this case is related both to the conduct and, given that it's not a ban on it, but simply a providing a list and with approval of specific equipment and then searching, the condition was reasonable. With that, the government is at its best. Thank you. We have some rebuttal time remaining. Your Honor, it is the government's burden to demonstrate that this condition is reasonably related and reasonably necessary. There is no evidence in the record that the Internet was at all involved, that Mr. Salas had any intention of uploading or distributing these images. To affirm the condition in this case would be an unprecedented expansion. No circuit has ever affirmed even a more limited restriction in a case that did not involve misuse of the Internet for child pornography. It's not an answer to say, well, the probation office said in its third addendum that all he has to do is list it. Mr. Salas isn't governed by the third addendum. He's governed by the JMC. Would that be a reasonable condition to have the equipment approved? That's what Mr. Silber just said, to so that the listing is in order to approve the equipment. Why isn't that reasonable, given that some of the equipment that is related to computers was actually used in the commission of the crimes? Because, Your Honor, the word approve implies the power to not approve. Right. All he has to do is list. And if they banned scanners and printers, would that be reasonable? I'm sorry, Your Honor. If they utterly banned scanners and printers, would that be reasonable? For all purposes, without a provision for approval, I don't agree, Your Honor. There's too many legitimate purposes that Mr. Salas could use his printer for. I mean, he wouldn't be able to print out a document that he used on his computer. I think that would be going too far and would be a greater deprivation of liberty than is reasonably necessary. Well, that takes us back to whether that is something that can then be monitored and searched to determine that it is his business documents or his personal affairs rather than more counterfeit. Again, Your Honor, I don't know that it's necessary here. And I certainly don't know on this record what type of searching would be available that would not cross over the line into a greater intrusion of privacy and a greater deprivation of liberty than is reasonably necessary. It might be that there are ways to monitor that very limited aspect. But anything involving the Internet, I think, is simply unsupported here in this case. And I would submit on that. Thank you. The case just argued is submitted. We appreciate the arguments of both parties, and we stand adjourned for this session.
judges: B. Fletcher, Fernandez, Graber